# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

HAROLD IRVING et al.

    Plaintiffs,

    v.

PUI TAK CENTER et al.

    Defendants.

No. 12 CV 8092
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Harold Irving (father to Zaria and Jeremiah), Cara Irving (mother to Zaria and Jeremiah), Zaria Irving, and Jeremiah Irving (collectively "Plaintiffs"), brought this action alleging federal civil rights violations and state law tort claims against Defendants Pui Tak Center ("Center"), Pui Tak Christian School ("School"), Chinese Christian Union Church ("Church"), David Wu, Sylvia Wu, and June Gin (collectively "Defendants").[1] Currently before me are Defendants' Motion to Dismiss Counts I and II, both brought under Title VI of the Civil Rights Act of 1964, for failure to state claims on which relief can be granted, and Chinese Christian Union Church's Rule 12(b)(1) Motion to Dismiss Counts I, II, V and VI, for lack of subject matter jurisdiction. For the following reasons, the motions are denied.

**I.    Motion to Dismiss Counts I & II**

**Background**

Plaintiffs are African-American citizens of the United States and residents of the State of Illinois. Defendants are Illinois Not-for-Profit organizations that serve a predominantly Chinese

---

[1] The Complaint alternates between "June" and "Judy" when referencing the Vice Principal of Pui Tak School. This opinion will maintain the use of "June."

immigrant population and operate a private, Christian, pre-primary and elementary school. Zaria and Jeremiah were enrolled as students at the School during the 2010-2011 school year. Plaintiffs allege that Defendants subjected Zaria and Jeremiah to intentional racial discrimination during this period, at the same time that they received federal financial assistance, in violation of Title VI of the Civil Rights Act of 1964. Defendants brought this Motion to Dismiss asserting that Plaintiffs' Complaint fails to adequately state claims on which relief can be granted. Specifically, Defendants contend that there is not a nexus between the federal financial assistance that Defendants receive and the grammar school program that would require the School to comply with Title VI, and that Plaintiffs' Complaint fails to meet the *Twombly/Iqbal* standard.

**Legal Standard**

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, it must contain sufficient factual matter to state a claim that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* 556 U.S. at 678.

When analyzing a Rule 12(b)(6) motion, I accept all well-pled facts as true, and draw reasonable inferences in the light most favorable to the plaintiff. *See Autry v. Nw. Premium Services, Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998).

**Analysis**

Title VI states, "[n]o person in the United States shall on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. §2000d. Title VI invokes Congress' power under the Spending Clause to place conditions on the grant of federal funds. *See Barnes v. Gorman*, 536 U.S. 181, 185–86 (2002).

To state a claim under Title VI a plaintiff must allege two elements. First, plaintiffs must allege that they have been intentionally discriminated against on the grounds of race. *See Hodges by Hodges v. Public Bldg. Com'n of Chicago*, 864 F.Supp. 1493, 1501 (N.D. Ill. 1994). Second, a complaint must allege that defendants are recipients of federal financial assistance. *Id.* Historically, Title VI applied "[o]nly to . . . specific programs that received federal funds." *Id.*; *see also Grove City College v. Bell*, 104 S.Ct. 1211 (1984). Today, however, "program or activity" has a broader scope, codified under 42 U.S.C. § 2000d–4a, and includes "all of the operations" of the institution that conducted the program or activity. *See* 42 U.S.C. § 2000d–3(A)(ii).

**A.     Intentional Discrimination**

Defendants contend that Plaintiffs' "conclusory allegations of intentional racial animus fail the *Iqbal* [facial plausibility] test." Motion to Dismiss at ¶11. Defendants claims that Plaintiffs "juxtapose the fact that they are African-American with the fact that the School has its roots deep in the Chinese-American community, take what happened to Zaria and Jeremiah, and then brush on a paper mâché of alleged racial discrimination." *Id.* Defendants further claim that the Plaintiffs' Complaint "does not make it *more plausible than implausible* that the intentional racial discrimination was the explanation for what happened." *Id.* at ¶12 (emphasis in original).

3

*Count I*

Count I alleges that Defendants duct taped four-year-old Jeremiah's hands together and made statements that were racially motivated in an attempt to racially profile and discriminate against Jeremiah. According to Plaintiffs, Defendants taped Jeremiah's hands together—first with painter's tape, then with duct tape—because he refused to take a nap and did not want to wash his hands. The Complaint further alleges that when Harold returned to the School the following day, June informed Harold that he would have to tell Jeremiah that "it is not acceptable not to listen, and that this is how it ends up with kids getting guns." Complaint at ¶23.

The Complaint alleges that in restraining Jeremiah with duct tape and making the statement about kids getting guns, Defendants' actions were based upon race, willful and malicious intent and bad faith, with an improper motive of depriving Jeremiah of his liberty and violating his civil rights. Count I further claims that Defendants treat similarly situated students who are not black differently.

Duct taping a four-year-old's hands together seems outrageous and disproportionate to a preschooler's refusal to take a nap or wash his hands. There is no indication that Jeremiah was violent, posed a threat to himself or those around him, or needed to be restrained for any reason. Similarly, it is unclear what relevance a preschooler not wanting to wash his hands or take a nap has to do with kids getting guns, and I disagree with Defendants' contention that it takes "especially acute sensitivity" to read it as a statement of racism.

Defendants misconstrue the plausibility standard to require a complaint to make it *more plausible than implausible* that intentional racial discrimination was the explanation for what

happened.  The Supreme Court has been clear, "[t]he plausibility standard is not akin to a 'probability requirement.'"  *Iqbal*, 556 U.S. at 678.  Certainly, at a later stage, Defendants can argue that there is a non-discriminatory explanation for the alleged conduct, but to survive a motion to dismiss, a plaintiff need only plead factual allegations that are "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

This highly unusual method of discipline, combined with Jeremiah's minority status at the School and the potentially racially charged remark about guns, creates the plausible inference that Jeremiah was subject to intentional race-based discrimination.

*Count II*

Count II claims that Zaria was subject to verbal and physical harassment at school and that the School was deliberately indifferent to the conduct.  The Complaint specifically alleges that on or about September 20, 2010, while in her supervised gym class, Zaria was attacked by a group of her classmates who knocked her to the ground, held her down, and then kicked, punched, and scratched her.  Complaint at ¶34.  The Complaint states that, although Zaria was bruised and bandaged when Harold picked her up from school that day, no mention of the incident was made to her parents until Harold requested a meeting with June.  *Id.* at ¶35.  The Complaint further states that June denied, and continued to deny the incident, until Harold was presented with letters of apology written by the students who attacked Zaria.  *Id.* at ¶36.  Count II describes other instances when Zaria was slapped in the face, kicked, and subjected to racially based name calling by fellow students.  *Id.* at ¶37.

Plaintiffs allege that Zaria's treatment was witnessed and/or reported to Defendants, and that Defendants refused to take action to protect Zaria, or even hold a meeting with Plaintiffs to discuss the matter.  *Id.* at ¶41.  Count II further alleges that Defendants treated similarly situated

5

students who are not black differently, and that Zaria's treatment was racially motivated and was an attempt to subject her to discriminatory treatment. *Id.* at ¶39, 42.

Defendants contend, "the allegations of how Zaria was allegedly bullied and harassed to the point that she was being denied the fundamentals of an education, and the School's alleged deliberate indifference to that are rudimentary conclusions" that fail to meet the requisite standard. Motion to Dismiss at ¶15. Defendants point to *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 652 (1999), and allege that the conduct complained of does not rise to the level of holding a school responsible for student-on-student bullying. *Davis*, 526 U.S. at 652.

*Davis* involved a Title IX claim of student-on-student sexual harassment in which the Supreme Court found that federal funding recipients are properly held liable in damages when they are deliberately indifferent to harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. *Id.* at 650. The Court in *Davis* concluded that sexual harassment is a form of discrimination for Title IX purposes, and that "[s]tudents are not only protected from discrimination, but also specifically shielded from being 'excluded from participation in' or 'denied the benefits of' any 'education program or activity receiving Federal financial assistance.'" *Id.* at 649–50. The Court noted there are limits on a funding recipient's liability, stating that,

> at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe,

> pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.

*Id.* at 651–52.

*Davis* involved a claim of Title IX gender discrimination, not Title VI race discrimination. Defendants do not provide, and I have not found, any authority binding on this Court to support the contention that the same standard applies to both Title VI and Title IX actions. Assuming the same standard applies, Plaintiffs have adequately alleged conduct that rises to the level of holding a school responsible for student-on-student bullying. Count II alleges more than "simple acts of teasing and name-calling." *See Davis*, 526 U.S. at 652. The Complaint alleges that, in addition to being teased and taunted because she is black, Zaria was subjected to physical violence on multiple occasions. The Complaint further asserts that Defendants were deliberately indifferent to the harassment and violence directed at Zaria because they failed to report the incidents and denied the occurrence of such events. Complaint at ¶35–36. Allegations of multiple incidents of harassment and violence suggest that Zaria was subject to severe and pervasive harassment, and assertions that Defendants were aware of the conduct but refused to report it to, or meet with, Harold and Cara create the plausible inference that Defendants were deliberately indifferent.

**B.      Federal Financial Assistance**

The second element of a Title VI claim that Plaintiffs must plead is that defendants receive federal financial assistance. Plaintiffs allege that Pui Tak, the School and/or the Church accept and receive federal funding for three programs: an Adult English as a Second Language (ESL) program, a school lunch program, and citizenship programs.

Defendants acknowledge that they received federal funding and that Pui Tak Center stipulated that it would comply with Title VI. Motion to Dismiss at ¶3. Defendants also

7

acknowledge that whether or not an entity receives federal financial assistance is a fact-specific test, and cite to *Hodges v. Public Bldg. Com'n of Chicago*, 864 F.Supp 1493, 1506 (1994),

> whether or not an entity receives federal funds is no longer the *sine qua non* of a Title VI action. Consistent with the broad definition of 'program or activity,' courts have rejected such a formalistic approach in favor of examining the defendant's relationship to the entity receiving the federal funds.

*Hodges*, 864 F.Supp at 1506.

Defendants cite to the correct standard, but then attempt to apply the old, incorrect standard by claiming that Title VI only applies to the specific program that received federal funds. Defendants argue that the federal funding they receive is for adult ESL instruction and American civics instruction, and is not allocated for pre-school through sixth grade child education. Motion to Dismiss at ¶3. Defendants claim that Pui Tak Center "promised to abide by Title VI in its adult naturalization and civics educational program . . . it does not necessarily follow that the Irvings' participation in the federally *un*funded grammar school program makes them third-party beneficiaries of the Center's federally funded adult education program." Motion to Dismiss at ¶4 (emphasis in original).

Historically, Title VI applied "[o]nly to . . . specific programs that received federal funds." *Hodges*, 864 F.Supp at 1504; *see also Grove City College v. Bell*, 104 S.Ct. 1211 (1984). Today, however, "program or activity" has a broader scope, and includes "all of the operations" of the institution that conducted the program or activity. *See* 42 U.S.C. § 2000d–4a. "For the purposes of this chapter, the term 'program or activity' . . . mean[s] all the operations of . . . [a] private organization . . . which is principally engaged in the business of providing education . . . " 42 U.S.C. § 2000d–3(A)(ii); *see also Hodges*, 864 F.Supp at 1505 (citing *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991). Therefore, Defendants' claim that Title VI only applies to the specific program that received federal funds is incorrect.

8

Even if Defendants could show that the Title VI does not apply to the School because the federal funds were allocated for other operations, Plaintiffs still have alleged sufficient facts to support their claim that the School is subject to Title VI. Defendants only address the ESL and American Civics programs in their Motion. Defendants fail to address Plaintiffs' allegations that Defendants received federal funding for a school lunch program during the time that the Irving children were enrolled in the School. So even under the obsolete program-specific standard, the School would be subject to Title VI requirements as a recipient of federal financial assistance through the USDA National School Lunch Program. Therefore, Plaintiffs' Complaint provides sufficient, well-pled factual allegations to allow this Court to draw the reasonable inference that Defendants received federal financial assistance.

Defendants' motion to dismiss Counts I and II are DENIED.

## II. Defendant Chinese Christian Union Church's Rule 12(b)(1) Motion to Dismiss

Defendant Chinese Christian Union Church also brought a Motion to Dismiss Plaintiffs' claims against the Church for lack of subject matter jurisdiction. Defendant asserts it is an independent organization, separate and distinct from Pui Tak Center and the School. Defendant further asserts that it was not involved in the alleged discrimination, does not receive federal funding, and does not have a relationship with the Plaintiffs that could give rise to liability.

Plaintiffs allege that the Church is owned, operated, or otherwise legally affiliated with or responsible for the School, and that the Church engaged in the business of operating the School. Plaintiffs assert that the Center and the School are Church-based organizations, and that the activities of the School, Center and Church are so closely entwined as to blur the distinction between the entities.

It is unclear at this state what the relationship is between the Pui Tak Center, School, and Church.[2] Defendant points to authority in support of its position that there is neither an apparent nor actual relationship between the Church and School; however, this authority involves cases where evidence has been presented and the Court has issued its ruling at the summary judgment stage. Here, too, the Court will need to see evidence in order to determine whether there is in fact a relationship between the School, Center and Church that could give rise to liability for the Church. At this point in time, however, I accept Plaintiffs' well-pled allegations that the Church is engaged in operating the School as true, and draw the reasonable inference that the School and Church are sufficiently affiliated with one another to sustain the Title VI claims.

Defendant's motion to dismiss for lack of jurisdiction is DENIED.

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss Counts I and II, and Defendant Chinese Christian Union Church's motion to dismiss for lack of jurisdiction are DENIED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: May 22, 2013

---

[2] The lack of clarity surrounding the relationship between the entities is further confused by Pui Tak Center's Motion to Dismiss Counts I & II, in which Defendants state, "Pui Tak Center, an Illinois Not-for-Profit Corporation, d/b/a Pui Tak Christian School," thus acknowledging some relationship between the Center and the School. However, it is unclear what that relationship is and/or if that relationship encompasses the Center doing business as the Church as well.